23-7259 Flowers v. Hartford Life and Accident. Yes, Your Honor. Good morning, Your Honors, if it pleases the court. My name is Noah Brazil. I'm here on behalf of appellant Carrie Flowers. This matter arises under Section 1132A1B of ERISA and specifically involves Ms. Flowers' claim for long-term disability benefits. The record establishes that Ms. Flower went out of work in 2008 and has remained out of work due to disability since then. Now, Hartford disagreed with this finding as of 2020, 12 years after Ms. Flowers became disabled and ultimately denied her on the basis that she could perform certain occupations identified in a vocational report by one of its in-house consultants. After an administrative appeal, it was brought to the district court who, on cross-motion for summary judgment, ultimately ruled in Hartford's favor. In so ruling, the court found that Hartford's vocational analysis was supported by substantial evidence in the form of Ms. Housley's vocational analysis report, which the court confirms states that Hartford identified five occupations that they believe Ms. Flowers could perform because they were entry-level occupations that required no protracted training experience and involved only minimal learning to perform. Well, the report says that, but the actual Hartford decision doesn't rely on that. It says that you need to have the bachelor's degree and the experience, right? So, you know, it's interesting that you bring that up, Your Honor, because the final denial from Hartford does not say at all that a bachelor's degree qualified Ms. Flowers to perform the identified occupations. Rather, the sole conclusion that it relied, well, in the final denial, the sole conclusion was our original TSA remains valid, but the only conclusion, which is Ms. Housley's report, and the only conclusion Ms. Housley states in her report, which is that appellate record. I mean, when Hartford comes up with the closest occupations, it is applying the right specific vocational preparation, right, it is talking about highly skilled. So, that's. So your argument is just based on the fact that the input to that determination, the report says at one point, unskilled. But it's not clear that Hartford relied on that notion, especially if they came up with these other closest occupations that are classified in a different SVP. So, Your Honor, it's not clear at all, other than this classification as the occupations as unskilled, the conclusions that Hartford relied upon, there is no evidence in the record showing that a bachelor's degree alone would have qualified Ms. Flowers. In fact, the. Ms. Flowers' own employment analysis says the occupation of personnel manager is considered highly skilled, requiring four to 10 years of education, training, and or experience, right? In the profession. Your client has four years of education, because she has the bachelor's degree, and then five years of experience, right? So, five years of experience, then 12 years of absence from that work, that field altogether. Okay, we'll talk about whether that cancels it out, but just in terms of the basic qualifications, I mean, your own employability, employment analysis says highly skilled, four to 10 years of education, training, and experience, and your client has that, right? So, yes, at the time that. Okay, so if we're reviewing for substantial evidence, it has to be that the evidence is such that no reasonable adjudicator could reach this determination. I mean, you think it is impossible to conclude that somebody would be qualified for such a job because they have been out of the field for some period that necessarily cancels out their qualifications? Well, particularly the field that we're talking about, the occupations are one that there's lots of intersections of law, employment law, employee benefit law. These are ever-evolving situations where if you are out of that field altogether for over a decade, it is unreasonable to think that you could step right back into it with minimal training, even if you did have five years of experience back at ending in 2008. And just to emphasize the point further, under the Dictionary of Occupational Titles, the occupation of attorney has the same SVP number as Ms. Flowers' occupation. And just because she has a bachelor's degree wouldn't qualify her to practice law. Even if she had five years of practicing law as an attorney 12 years ago, if she was not maintaining her license, her CLE credits, and staying up to date. I know, it's interesting you say that because I know plenty of people who are attorneys and they go into some other role where they're not practicing law and then they go back into the practice of law. It's not obvious that being out of the practice of law for some period of time cancels out the fact that you have a law degree and legal training. But it does make you, it does hinder your ability to be employed in a gainful position to say, hey, firm, I'm a potential applicant for hire. So the employability report says something like it reduces her competitiveness for the positions or something like that, right? But that is not a determination, that is not a fact that means she's not qualified to do the job, right? I mean, I would say that it is, that without additional training and education in the field, that it is unreasonable. And furthermore, I guess more, the evidence of the record just does not, if anything, that is the only evidence in the record speaking to that specific issue. And it points towards that she would not be, no longer qualified to perform those positions because in large part her absence from the course. But it doesn't say that, right? It says that it reduces her competitiveness to obtain them. It doesn't mean that she's not qualified for them, right? And so if I'm looking for evidence that would require any reasonable adjudicator to reach the opposite conclusion, you think that that compels the conclusion that she's not qualified because there's the one line that says because she's been out of the workforce for a while, she'd be less competitive? No, I think it compels the conclusion that Hartford was arbitrary and capricious in this vocational analysis because one, that argument about qualification through education alone only came up in the district court briefing, not below. It's not in any part of the administrative record, the denial letters. So, and the only evidence of record on that point, I agree with you, your honor, that it does not affirmatively say that it would preclude and it conditions it, but nevertheless, that just was not a part of Hartford's vocational analysis. And for that to be bootstrapped at the district court level without giving Ms. Flowers an opportunity to submit evidence directly responding to it, when in fact, the only evidence Hartford has to show us vocational analysis is a report that says, Ms. Flowers can perform these occupations because they are simple, unskilled occupations. And I guess just to build up. But Hartford's own decisions, right, say that Flowers is qualified for the positions because she has the education and experience and training, right? It does not say that it's because it's unskilled. But Hartford has no evidence to support that, I guess is my point. But you don't dispute that she does in fact have the bachelor's degree and the five years of experience, right? I do not dispute that. You just think that that's canceled out because she's been out of the workforce. Well, I think that there is evidence in the record showing that that is canceled out and that Hartford had, as a fiduciary under ERISA, had a duty to take that information into consideration and not necessarily agree with it, but it couldn't just ignore it. And that's what happened here. Thank you, counsel. Thank you. Mr. Burns.  Good morning and may it please the court. Thank you, your honors, for hearing from us today. As you've heard, this is an ERISA benefits case. And one of the things we didn't talk about is the standard of review, although we definitely alluded to it in the discussion of substantial evidence. The precedent in this circuit holds that under the arbitrary and capricious review, a court won't disturb a finding by a claim administrator unless it's arbitrary and capricious, and that means it's not reasonable and it's not supported by substantial evidence in the record. Substantial evidence means more than a scintilla and less than a preponderance. Here, the record shows, and the judge in the district court below did a very nice job of going through all the substantial evidence that supports the claim decision here. We have the IME report of Dr. Leva, who spent some time in person with Ms. Flowers and found that she had a lot of subjective complaints, but no objective proof. Well, I take it this appeal isn't really about whether she is physically disabled. It's about whether she's qualified for the employment, right? Well, he's challenging the decision, but yes, he's focused on the vocational analysis. Right, and so do you agree that the employability analysis report didn't mischaracterize the requirements for the occupations as unskilled? No, I disagree with that. I think it's clear that the determination and the entire vocational report of the Hartford vocational analysis speaks to the plaintiff's prior education, having a bachelor's degree, having worked as a manager of human resources for several years. So she has her own experience and she has her college degree. Somehow, I think she just put in an incorrect, an incorrect code that spat out the wrong number. I don't think anybody relies on this. Does use the term unskilled, and so you agree that that's a mistake, but you think given the full context of the analysis, it's clearly like a typo or something.  The analysis does rely on her skills and training. Not only is that correct, Your Honor, but if you look at both the vocational report and the claim and appeal determinations, there's nothing in there that mentions that these positions are unskilled. And by the way, it's a- So I get that point, but what about the argument that she's been out of the workforce for 12 years and maybe that cancels out the education, training, and experience? Well, I don't think you lose your education and experience because you've been out of the workforce. The question is, under the definition of disability, which is any occupation, it's any occupation that you're qualified to do by training, education, or experience. And the finding here was that she had all of it. I mean, she didn't need to show all of it. As the district court explained, there's a disjunctive in that definition. So you just need to have one. She certainly had the education. No one's denying that she had a bachelor's degree. And she certainly had the experience. I mean, is it possible that to qualify for a certain kind of position, you need up-to-date training? I don't think there's any evidence in the record that would explain that one way or the other. But I think just as a practical matter, people who have been involved in human resources understand what the job entails and could learn with minimal training what the new software might be, what the new information tools that are used. But they have the skillset from their prior work life to move forward. And just, I want to- But at least you're saying that that is possible. And so being out of the workforce doesn't compel the conclusion. Exactly. Exactly. And I just want to make this one point, Your Honor, that the five jobs that were identified were considered to be representative of a lot of other positions that the plaintiff was qualified for by either education, training, and experience. These were just some that were representative and near to what she had previously done. But again, it doesn't have to be near to what she had previously done in order for it to still be any occupation for which the plaintiff was capable physically, functionally, and by education to do. So if it's a comparative job where an office manager in a kind of administrative role as opposed to a specifically HR role, it wouldn't require the same training. Well, exactly. I mean, I think you just have to make sure that it meets the salary requirements. Oh, right, yeah. And so she gave several representative jobs, but those aren't the only ones. And while I understand that the plaintiff here is focused on this vocational issue, I mean, it's almost a concession that the weight of the substantial evidence here is otherwise overwhelming. I mean, the things that Hartford did, they made sure that the IME went to all of Ms. Flowers' treating physicians, and they were all asked before a claim decision was made to comment on it. And one of them, Dr. Pintaro, actually agreed with all of Dr. Leva's findings, and he was her internist. He dropped out of the treatment by the time it went up on appeal, but I think that was notable. And we also don't have any discussion of the fact that we had IPCs, independent peer review consultants, Dr. Hussain, who is double-boarded in pain management, and I think physical rehabilitation medicine, found that there was no, besides her subjective complaints, there wasn't anything in her physical exam results or testing or doctor's records that would support her complaints. And then Dr. Becker, who is a rheumatologist, found basically the same. I mean, there's no comment on that either. So we've got Dr. Pintaro, Dr. Leva, Dr. Hussain, Dr. Becker. I mean, this is more than substantial evidence. And then when you add to all of that the report of the vocational rehab specialist who found jobs that were in the economy that the plaintiff could do, it seems as if, as I said, the factual evidence here is overwhelming, that the decision was not arbitrary and capricious. It's arguably de novo, correct, but we're not dealing with that standard here. You know, there were a couple of things in the plaintiff's briefing that I really wanted to touch on very briefly. There was a discussion of the Durakovic and Demirovic cases, which this court issued opinions on back in the 2000s. And I feel like neither of those cases are sort of on point yet. In those cases, two people who were manual laborers for their entire working lives, we're talking like 30 years, neither of them was proficient in English. And the finding was that the vocational reports in those cases didn't take that into account. I mean, here, the report takes the reality of what Ms. Flowers did in her working life and applies it directly to the circumstances that we have facing us here. So, I mean, I think it's hard to say that- It is true that the insurer didn't specifically consider being out of the workforce for 12 years, right? I don't think they specifically considered it. I don't think it was, I don't think it was, I think, particularly relevant based upon the fact that she was functionally able to proceed. I mean, if you have the functional physical ability to do work, that's the any occupation standard. And as Your Honor pointed out, just because you've not been in the workforce for 12 years isn't going to disqualify you from going back to work. It might- And is that because really this case turns on the definition of any occupation, which means you're qualified by education, training, or experience? Yeah, yes, that's exactly correct. I mean, is that basically what you're relying on? Yes, that's basically correct. I mean, that's the coverage term. That's the test. And, you know, that's, you know, when, and I see my time is just about running out. I think it's important to notice that the patient, the plaintiff originally went out on disability due to a seizure disorder and a bipolar disorder. None of those was still in the conversation at the time that the benefits were denied. At the time the benefits denied, her disability was based upon subjective complaints due to fibromyalgia. And the court actually, that was addressed in a footnote that her seizures had been corrected and that mental health concerns were no longer an issue. Yes, in fact, I believe the record shows that the plaintiff herself acknowledged that she wasn't treating with any mental health care providers any longer. So, you know, it's almost as if we have a whole new, new, you know, pallet of complaints that needed to be addressed. And I think that they were. Look, I see my time is out unless you have any further questions. Thank you for your time and attention. Thank you, counsel. We'll hear rebuttal. If it pleases the court. First and foremost, it is true that on appeal, we're focusing on the vocational issues. That's not a concession as far as the disagreements regarding the medical evidence. But nevertheless, we are here to talk about the issues actually raised on appeal. And under Demirovich, I apologize if I'm mispronouncing the name of the case, a finding that a claimant is physically capable of performing work is meaningless without consideration of whether she is vocationally qualified to perform said work. Now, on that point, the evidence that Hartford is relying on. But there is consideration that she's vocationally qualified, right? Because they talk about the skills that are required and the education and training and experience that she has. You're just saying that that conclusion was wrong because being in the workforce for 12 years should compel the conclusion that she was not qualified. So that's not what I'm saying, Your Honor. What I'm saying is that Hartford has no evidence to show that it actually made that consideration. The only evidence that it relied upon is this erroneous report that relies off of the mistaken characterization, the erroneous mischaracterization of the occupations as being entry-level positions. I mean, I acknowledge, and I think opposing counsel just acknowledged that it was a mistake to describe it as unskilled. Well, then there's no vocation. But Hartford's decision does not rely on it being unskilled. It talks about her education and training, right? And skills. So in order to make a qualified vocational judgment, they needed to have gotten, had it be considered, as they tried to do with Ms. Housley, with someone with the appropriate training and background to make that decision. That is not something that Hartford was entitled to just decide on its own because it seems like it made sense. It had the opportunity, especially when presented with evidence showing that it actually would have impacted her ability to walk back into these occupations. It was important for Hartford to actually do the full and fair investigation that it was required to do under the law and to have that considered by a vocational expert. And without doing so, they should not be entitled to just make this conclusive assertion. Thank you for your time. Thank you, counsel. Thank you both. We'll take the case under advisement.